UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Robert Faiella and
Suzanne Faiella,
     Plaintiffs

     v.                          Civil No. 05-cv-238-SM
                                        Opinion No. 2006 DNH 084
Internal Revenue Service,
     Defendant

## O R D E R

Robert and Suzanne Faiella have sued the Internal Revenue Service ("IRS") under the Freedom of Information Act ("FOIA"). They seek disclosure of records created by an IRS revenue agent during a civil audit of their 2000, 2001, and 2002 federal income tax returns. Before the court are cross motions for summary judgment. For the reasons given, the Faiellas' motion for summary judgment is denied, and the IRS's motion for summary judgment is granted.

### Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The role of summary judgment is to pierce the

boilerplate of the pleadings and provide a means for prompt
disposition of cases in which no trial-worthy issue exists."
Quinn v. City of Boston, 325 F.3d 18, 28 (1st Cir. 2003) (citing
Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).
When ruling on a party's motion for summary judgment, the court
must view the facts in the light most favorable to the nonmoving
party and draw all reasonable inferences in that party's favor.
See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34,
37 (1st Cir. 2003) (citing Rivera v. P.R. Aqueduct & Sewers
Auth., 331 F.3d 183, 185 (1st Cir. 2003)).

## Background

The basic facts of this case are undisputed.  IRS Revenue
Agent Therese Gomm conducted a civil audit of the Faiellas'
income tax returns for 2000, 2001, and 2002.  That audit
generated various records, including a Form 2797, "Referral
Report of Potential Criminal Fraud Cases."  On March 1, 2004, the
Faiellas' examination was referred to the IRS's Boston Field
Office of Criminal Investigation.

By letter dated January 13, 2005, plaintiffs directed a FOIA
request to the IRS Disclosure Office, seeking "all documents,
including Form 2797, prepared by IRS Revenue Agent Therese Gomm

2

in connection with her examination of [their] 2000, 2001, and 2002 federal income tax returns." (Compl., Ex. A.) The Disclosure Office denied the Faiellas' request, citing the exemptions from disclosure described in 5 U.S.C. §§ (b)(3) (material exempted from disclosure by a statute other than FOIA), (b)(5) (inter-governmental and intra-governmental memoranda), (b)(7)(A) (records compiled for law-enforcement purposes, the disclosure of which could interfere with enforcement proceedings), (b)(7)(C) (records compiled for law-enforcement purposes, the disclosure of which could constitute an invasion of privacy), and (b)(7)(E) (records compiled for law-enforcement purposes, the disclosure of which would disclose law enforcement techniques, thus risking circumvention of the law). (Compl., Ex. B.)

The Faiellas appealed, on grounds that they were "not interested in the ongoing criminal investigation . . ., but only request[ed] the civil audit materials." (Compl., Ex. C.) The IRS Appeals Office rejected that argument, explaining that "[l]aw enforcement purposes are not limited to criminal investigations [but] include[] compliance reviews, income examination, collections procedures, and/or any procedures enforcing any provisions of the United States Code." (Compl., Ex. D.) On that

basis, the Appeals Office affirmed the Disclosure Office's
decision to deny the Faiellas' FOIA request.

This suit followed.  In their complaint, the Faiellas waive
their request for disclosure of the Form 2797, but claim
entitlement to unredacted copies of almost all the other records
generated during Revenue Agent Gomm's audit.[1]  In response to
plaintiff's suit, Helene Newsome, an attorney in the IRS Office
of Chief Counsel, determined that 288 pages of documents are at
issue in this case.  (Def.'s Mot. Summ. J. (document no. 15), Ex.
1 (Newsome Aff.) ¶ 10.)  Attorney Newsome further determined that
seventy-one pages could be provided to plaintiffs in full, forty-
eight could be provided in part, and 169 were properly withheld
from disclosure.  (Newsome Aff. ¶ 11.)

---

[1]  Plaintiffs do not contest the IRS's right to redact
direct-dial telephone numbers of IRS employees from pages 22 and
33, names of third parties from pages 20, 61, and 65, and third-
party financial information from pages 40 and 41, based on the
exclusions described in 5 U.S.C. §§ 552(b)(6) and (b)(7)(C),
which pertain to information in agency control, the disclosure of
which would constitute an unwarranted invasion of personal
privacy.

**Discussion**

"The [Freedom of Information Act] requires government agencies to 'make . . . promptly available' to any person, upon request, whatever 'records' the agency possesse[s] unless those records fall within one of the statute's exemption[s]." Maine v. U.S. Dep't of Interior, 298 F.3d 60, 65 (1st Cir. 2002) (quoting 5 U.S.C. § 552(a)(3), (b)). Based upon defendant's motion for summary judgment and plaintiffs' concessions, three of FOIA's statutory exemptions remain at issue, those described in 5 U.S.C. §§ 552(b)(3), (b)(5), and (b)(7)(A).[2] "The government bears the burden of demonstrating the applicability of a claimed exemption . . ., and the district court must determine de novo whether the queried agency has met this burden." Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994) (citing Maynard v. CIA, 986 F.2d 547, 557–58 (1st Cir. 1993); In re Dep't of Justice, 999 F.2d 1302, 1305 (8th Cir. 1993) (en banc); Aronson v. IRS, 973 F.2d 962, 966 (1st Cir. 1992)).

In their motion for summary judgment, the Faiellas argue that: (1) the IRS has not carried its burden of demonstrating

---

[2] For reasons that are not clear, the IRS no longer appears to rely on 5 U.S.C. § 522(b)(7)(E), which was cited in the Disclosure Office's letter to the Faiellas, but not mentioned in defendant's pleadings.

that the material it withheld fits within any FOIA exemption; (2) the exemptions cited in connection with the IRS's redactions fail as a matter of law; and (3) the IRS should be ordered to produce both a <u>Vaughn</u> affidavit and the withheld documents.

The IRS also moves for summary judgment, attaching two <u>Vaughn</u> affidavits to its motion and arguing that those affidavits demonstrate that the information it withheld is exempt from disclosure.[3]  In their objection to summary judgment, the Faiellas do not address the adequacy of the IRS's <u>Vaughn</u> affidavits.  Instead, they argue that because they seek only information related to their civil audit, and not the criminal investigation, the IRS's claimed exemptions from disclosure all fail as a matter of law.

The material withheld from disclosure by the IRS and still in dispute falls into the following categories: (1) a document titled "Examination Workpapers – In Process for Referral Only," prepared by Revenue Agent Gomm in connection with referring

---

[3] The two affidavits were given by Attorney Newsome, of the IRS Office of Chief Counsel, Disclosure & Privacy Law, Branch 2 (Def.'s Mot. Summ. J., Ex. 1), and Lauren Youngquist, Supervisory Special Agent of the IRS Boston Field Office of Criminal Investigation (Def.'s Mot. Summ. J., Ex. 2).

plaintiff's case for criminal investigation (Newsome Aff. ¶¶
13(a), 15(a), and 17(a)); (2) various workpapers, notes, charts,
categorizations, calculations, and summaries created by Gomm in
connection with her analysis of the Faiellas' audit and her
decision to refer them for criminal investigation (Newsome Aff.
¶¶ 13(b), 15(b), and 17(b)); (3) correspondence between Gomm and
a senior IRS employee requesting advice concerning an issue that
arose during her examination of the Faiellas' returns (Newsome
Aff. ¶ 13(c)); and (4) Gomm's activity records and the notes she
used to prepare those records (Newsome Aff. ¶¶ 13(d), 15(c), and
17(c)).

One hundred and sixty-nine pages of material have been
withheld in full, and another forty-eight pages have been
withheld in part.  The IRS made redactions on the pages that were
withheld in part with marginal notes citing one or more statutory
exemptions from disclosure.  (See, e.g., Pl.'s Mot. Summ. J.
(document no. 16), Ex. 6).  Many pages have been withheld either
in full or in part in reliance on more than one statutory ground.
Obviously, a page withheld in full or any particular redaction on
a partially withheld page need only satisfy a single statutory
exclusion.  Rather than discussing the decisions to withhold
material document by document, or page by page, the two

affidavits submitted by the IRS (and, consequently, both motions for summary judgment) are organized exemption by exemption. Accordingly, this discussion is organized in the same way.

A. Section (b)(3)

The IRS invokes 5 U.S.C. § (b)(3) to justify withholding 165 pages of material in full and another twenty-three pages in part. Those pages encompass three categories of information: (1) the document titled "Examination Workpapers;" (2) Revenue Agent Gomm's workpapers, notes, charts, categorizations, calculations and summaries; and (3) Gomm's activity records and the notes she used to prepare them.

5 U.S.C. § (b)(3) protects from disclosure any material that is "specifically exempted from disclosure by statute (other than section 552b of [FOIA] . . ."  In this case, the relevant other statute is a provision of the tax code under which

> [r]eturn information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer <u>if the Secretary determines that such disclosure would not seriously impair Federal tax administration</u>.

26 U.S.C. § 6103(e)(7) (emphasis added).  Moreover,

> unlike actions under other FOIA exemptions, agency
> decisions to withhold materials under Exemption 3 are
> entitled to some deference.  We have observed that
> "once a court determines that the statute in question
> is an Exemption 3 statute, and that the information
> requested at least arguably falls within the statute,
> FOIA de novo review normally ends," Maynard, 986 F.2d
> at 554 (quoting Aronson, 973 F.2d at 965, 967).

Church of Scientology, 30 F.3d at 235.


It is undisputed that 26 U.S.C. § 6103(e)(7) exempts certain material from disclosure within the meaning of 5 U.S.C. § 552(b)(3).  See Church of Scientology v. IRS, 792 F.2d 146, 150 (D.C. Cir. 1986) (citing Linsteadt v. IRS, 729 F.2d 998, 1101–03 (5th Cir. 1984); Currie v. IRS, 704 F.2d 523, 526–28 (11th Cir. 1983)).  It is also undisputed that the material plaintiffs seek is "return information" within the meaning of 26 U.S.C. § 6103(e)(7).  Given the standard of review applicable to agency decisions to withhold material under § (b)(3), plaintiffs' argument that "it is inconceivable that releasing the results of a civil audit could 'seriously impair tax administration'" is not persuasive.  Plainly, if her civil audit prompted Revenue Agent Gomm to refer the Faiellas' case to the office of criminal investigation, and if the criminal investigation is using that audit and the analysis included in it as a jumping-off point,

then it is hard to imagine how disclosure of that material before the conclusion of the criminal investigation would not seriously impair tax administration.  Disclosing information under active consideration in a criminal investigation could undermine any future criminal prosecution by prematurely disclosing the government's potential theories, issues, and evidentiary requirements.  Moreover, even under <u>de novo</u> review, it would be difficult to find fault with the IRS's argument that it would seriously impair federal tax administration to disclose to plaintiffs the notes and observations of a revenue agent who conducted a civil audit that has precipitated an ongoing criminal investigation.

The IRS has met its burden of demonstrating the applicability of the § (b)(3) exemption.  It is, accordingly, entitled to judgment as a matter of law that the material it withheld under § (b)(3) is not subject to FOIA disclosure.

B. Section (b)(7)(A)

All the material the IRS withheld in reliance on § (b)(3) was also withheld under § (b)(7)(A).  In her affidavit, Attorney Newsome states that the withheld material consists, "in whole or in part, of information relevant to the ongoing criminal

investigation of plaintiffs, the release of which may reasonably
be expected to interfere with the IRS's enforcement proceeding."
(Newsome Aff. ¶ 15.)  Because the pages withheld in full under §
(b)(7)(A) were properly withheld under § (b)(3), an analysis
under § (b)(7)(A) is redundant as to those pages, but because
that section was also used to justify the partial withholding of
several other pages, it is necessary to conduct a § (b)(7)(A)
analysis.  The partially withheld material consists of: (1)
Revenue Agent Gomm's workpapers, notes, charts, categorizations,
calculations, and summaries; and (2) Gomm's activity records and
the notes she used to prepare them.

     5 U.S.C. § 552(b)(7)(A) provides that an agency may withhold
from disclosure "records or information compiled for law
enforcement purposes, but only to the extent that the production
of such law enforcement records or information could reasonably
be expected to interfere with enforcement proceedings."  In the
context of the § (b)(7)(A) exemption, "the agency need not make a
Vaughn-specific proffer; rather 'generic determinations of likely
interference' will suffice."  Curran v. Dep't of Justice, 813
F.2d 473, 475 (1st Cir. 1987) (quoting NLRB v. Robbins Tire &
Rubber Co., 437 U.S. 214, 236 (1978); citing Crooker v. Bureau of

11

<u>Alcohol, Tobacco, & Firearms</u>, 798 F.2d 64, 66–67 (D.C. Cir. 1986); <u>Barney v. IRS</u>, 618 F.2d 1268, 1272–73 (8th Cir. 1980)).

Plaintiffs concede that a civil audit is a "law enforcement purpose," and that there is a current law enforcement proceeding against them, but contend that, as a matter of law, disclosure of materials generated during their civil audit could not possibly interfere with the law enforcement proceeding against them.  In plaintiffs' view, they are "not requesting documents that would reveal the government's <u>criminal</u> case, but simply the records from the <u>civil</u> audit."  (Pl.'s Mot. Summ. J. at 7 (emphasis added.)

Because an IRS audit is a law enforcement activity, the distinction that plaintiffs attempt to draw between the civil audit and the criminal investigation is not meaningful in the context of a § (b)(7)(A) analysis.  <u>See</u> <u>White v. IRS</u>, 707 F.2d 897, 901 (6th Cir. 1983) ("The latter exemption, 552(b)(7)(A), is applicable to investigation developed documents whether potentially civil or criminal in import.") (citing <u>Williams v. IRS</u>, 479 F.2d 317 (3d Cir. 1973)); <u>Barney v. IRS</u>, 618 F.2d 1268, 1273 (8th Cir. 1980) ("We consider that disclosure of such records as witness statements, documentary evidence, agent's work

12

papers and internal agency memoranda, prior to the institution of
civil or criminal tax enforcement proceedings, would necessarily
interfere with such proceedings by prematurely revealing the
government's case.") (citation omitted).

      Given the status of the IRS's civil audit as a law
enforcement activity, the obvious relevance of that audit to the
ongoing criminal investigation, the standard the government must
meet to support non-disclosure under § (b)(7)(A), and the content
of the affidavits submitted by the IRS, the IRS has met its
burden of demonstrating the applicability of the § (b)(7)(A)
exemption, and is entitled to judgment as a matter of law that
the material it withheld under § (b)(7)(A) is not subject to FOIA
disclosure.

      C. Section (b)(5)

      The IRS argues that all 165 pages it withheld in full under
§§ (b)(3) and (b)(7)(A), plus another four pages, are exempt
under § (b)(5), and that the partial withholding of an additional
forty-four pages is also justified under § (b)(5).  The four
additional pages withheld in full consist of correspondence
between Revenue Agent Gomm and a superior, while the pages
withheld in part consist of: (1) Gomm's workpapers, notes,

charts, categorizations, calculations, and summaries; and (2) Gomm's activity records and the notes she used to prepare them. In the IRS's view, all the pages withheld under § (b)(5) contain predecisional deliberative material that documents the analysis that led Gomm to refer plaintiffs' case to the office of criminal investigation, which office is now using that material in its own investigation.

5 U.S.C. § (b)(5) protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." That "exemption has been interpreted to encompass 'those documents, and only those documents, normally privileged in the civil discovery context.'" Church of Scientology, 30 F.3d at 236 (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975)). Here, the privilege asserted by the IRS is "the executive or 'deliberative process' privilege." Providence Journal Co. v. U.S. Dep't of Army, 981 F.2d 552, 557 (1st Cir. 1992) (citing EPA v. Mink, 410 U.S. 73, 85-86) (1973)). The "deliberative process" privilege

> is designed to safeguard and promote agency
> decisionmaking processes in at least three ways:
>
>> [I]t serves to assure that subordinates within an

14

> agency will feel free to provide the decisionmaker
> with their uninhibited opinions and
> recommendations without fear of later being
> subject to public ridicule or criticism; to
> protect against premature disclosure of proposed
> policies before they have been finally formulated
> or adopted; and to protect against confusing the
> issues and misleading the public by dissemination
> of documents suggesting reasons and rationales for
> a course of action which were not in fact the
> ultimate reasons for the agency's action.

> Coastal States Gas Corp. v. Department of Energy, 617
> F.2d 854, 866 (D.C. Cir. 1980); see also Schell v.
> Department of Health and Human Servs., 843 F.2d 933,
> 939 (6th Cir. 1988).

Providence Journal, 981 F.2d at 557.  Finally,

> After considering any potential impact public
> disclosure might have on the employee-advisor, the
> agency decisionmaker, and the public, the court should
> construe Exemption 5 as narrowly as is "consistent with
> efficient Government operation."  Mink, 410 U.S. at 89
> (citation omitted).  Normally, a document will qualify
> for protection under Exemption 5 if it is both
> "predecisional" and "deliberative."  See Dow Jones &
> Co. v. Department of Justice, 908 F.2d 1006, 1008-09
> (D.C. Cir. 1990).

Id. (parallel citation omitted).

In reliance upon the § (b)(5) exemption, the IRS withheld in
full the same 165 pages of documents discussed in the two

15

previous sections,[4] plus four more pages (278-81) it

characterizes as

> correspondence between the revenue agent and a more
> senior IRS employee describing an issue that arose in
> plaintiff's examination and requesting that employee's
> analysis and recommendation as to the appropriate
> course of action with respect to that issue, and
> correspondence detailing the analysis, opinion, and
> recommendation provided by that other employee.

(Newsome Aff. ¶ 13(c).)  As described by Newsome, pages 278-81

plainly fall within the § (b)(5) exemption.  See United States v.

Weber Aircraft Corp., 465 U.S. 792, 798-99 (1984) (relying on the

plain language of the statute).

The IRS has also invoked § (b)(5) to justify two sets of

redactions.  First, it has redacted material from various

"workpapers, notes, charts, categorizations, calculations, and

summaries prepared by the revenue agent in connection with

determining whether to refer plaintiffs' case to CI for criminal

investigation" (Newsome Aff. ¶ 13(b)), asserting that the

redacted material contains "the agent's development and analysis

of the evidence obtained during the course of her examination of

---

[4] Because those pages were properly withheld under two other
exemptions, the following discussion, as to those pages, provides
a second layer of redundancy.

plaintiffs, including analyses of plaintiffs' deposits, checks, receipts, and expenses." Id.  Second, the IRS has redacted material from "the revenue agent's activity records, and notes used by the revenue agent to prepare her activity records," (Newsome Aff. ¶ 13(d)), asserting that the redacted material reflects "the opinions, analysis, and thought processes of the revenue agent, and the opinions, analysis, thought processes, and recommendations of various IRS personnel with respect to the direction of the investigation." Id.  Plaintiffs counter that they have not requested any documents that would fall under the § (b)(5) exemption, but only purely factual information, that is, the material compiled as a result of their civil audit and the notes made by the revenue agent during the interviews she conducted.

Again, the distinction plaintiffs draw between a civil audit and a criminal prosecution is not meaningful; both are law enforcement activities, and materials generated during a civil law enforcement proceeding are no less protected from disclosure than those generated during a criminal investigation.  And, in this case, it is undisputed that it was the civil audit that prompted the criminal investigation.

17

Turning to plaintiffs' principal contention, that they seek only factual information, they are, of course, correct in stating the law.  "[M]emoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery" and therefore subject to disclosure under FOIA.  Providence Journal, 981 F.2d at 562 (quoting Mink, 410 U.S. at 87–88; citing Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Mead Data Cent. Inc. v. Dep't of Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977)) (emphasis in the original).  Here, however, the affidavit submitted by the IRS is sufficient to demonstrate that any factual material that may have been redacted by the IRS is inextricably intertwined with predecisional deliberative material such that "disclosure 'would expose [the IRS's] decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine [the IRS's] ability to perform its functions.'" Providence Journal, 981 F.2d at 562 (quoting Quarles v. Dep't of Navy, 893 F.2d 390, 392 (D.C. Cir. 1998); citing Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991); Formaldehyde Inst. v. Dep't of Health & Human Servs., 889 F.2d 1118, 1123 (D.C. Cir. 1989)).

18

Because the IRS has met its burden of demonstrating the applicability of the § (b)(5) exemption, by showing that any factual information withheld under that exemption was inextricably intertwined with predecisional deliberative material, it is entitled to judgment as a matter of law that the material it withheld under § (b)(5) is not subject to FOIA disclosure.

## Conclusion

For the reasons given, the Faiellas' motion for summary judgment (document no. 16) is denied, and the IRS's motion for summary judgment (document no. 15) is granted.  The clerk shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

July 20, 2006

cc:  Brian T. Tucker, Esq.
     Matthew R. Roberts, Esq.
     Terry P. Segal, Esq.
     Joshua D. Smeltzer, Esq.

19